UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Thomas Probst** | ) | **CASE NO. 1:04 CV 02461** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **City of Strongsville,** | ) | |
| **Curtiss Fields, and** | ) | **Memorandum of Opinion and Order** |
| **Mark Stepanovich** | ) | |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Doc. 17). This case arises out of the individual defendants' shooting of plaintiff, allegedly in violation of the Fourth and Fourteenth Amendments to the Constitution. For the reasons that follow, defendants' motion is GRANTED.

## FACTS

Defendants Curtiss Fields and Mark Steponovich (the "officers") are officers in the police department of Strongsville, Ohio. The city is also a defendant. In support of their motion,

1

defendants set forth the following facts.[1]  The officers were called to a residence to investigate a disturbance involving plaintiff Thomas Probst and his girlfriend Carly Scott.  (Req. Adm. 1, 3-4).  When the officers arrived, plaintiff had a 30-06 rifle in his possession.  (*Id.* at 2).  The officers instructed plaintiff to surrender the rifle but he refused to do so.  (*Id.* at 5-6).  Plaintiff also ignored requests by the officers that plaintiff release Ms. Scott from the residence.  (*Id*. at 7-8).  The officers then fired upon plaintiff, injuring him.  When the officers fired upon plaintiff, he had the rifle in his possession.  (*Id.* at 9).  As a result of the events of that evening, plaintiff was sentenced to four years in prison for felonious assault and attempted kidnapping.  (*Id.* at 10-11).  Plaintiff was also convicted for intimidation of Carly Scott.  (*Id*. at 12).

Plaintiff did not file a brief in opposition to defendants' motion and has presented no controverting facts.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. UAW Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1]  Defendants submitted requests to admit which were served on plaintiff on May 11, 2005.  Because plaintiff failed to submit answers or objections within 30 days, the matters included therein are deemed admitted.  Fed. R. Civ. P. 36(a).

> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial. If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

In the event that a party does not respond to a Motion for Summary Judgment, Federal Rule of Civil Procedure 56(e) provides that summary judgment shall nonetheless be entered "if appropriate."

### DISCUSSION

42 U.S.C. § 1983 provides a vehicle for plaintiffs to seek money damages against those acting under color of state law for their violations of the Constitution or federal law. *St. John v.*

3

*Hickey*, 411 F.3d 762, 768 (6th Cir. 2005). Here, plaintiff alleges that his constitutional rights were violated when defendants shot him during the confrontation. The Fourth Amendment protects individuals from unreasonable seizure, which has been interpreted to apply to the shooting of an individual by police attempting to apprehend that individual. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). These claims are generally referred to as "excessive force" cases.[2] *Id*.

With respect to the officers, courts must conduct a two-step analysis prior to allowing a claim for money damages. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, there must actually be a constitutional violation. *Id*. "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 598, 160 L. Ed. 2d 583 (2004). Courts must balance the intrusion on the individual's Fourth Amendment interests with the interests of the government in effecting the seizure. *Graham*, 490 U.S. at 396. Considerations for this fact-intensive inquiry include whether the suspect poses an immediate threat to others and whether he is attempting to evade arrest or resist officers. *Id*.

Second, even if there is a constitutional violation, the officer might have qualified immunity. *Saucier*, 533 U.S. at 200. Qualified immunity protects officers from liability on the

---

[2] Plaintiff alleges violations of the Fourth and Fourteenth Amendments. However, the Supreme Court has clarified "that *all* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original).

sometimes "hazy border between excessive and acceptable force . . . ." *Id*. at 206. Because courts do not wish to hold individual officials personally liable or subject them to the burdens of litigation when the underlying law is unclear, the reach of the constitutional right must be "clearly established" such that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202. This reasonable official analysis examines the law in the specific context that the official is confronted with, rather than based on broad general principals. *Brosseau*, 543 U.S. 194, 125 S. Ct. at 599, 160 L. Ed. 2d at 589. Except in the most obvious factual circumstances,[3] the reasonable official analysis requires specific precedent that "squarely governs the case" on the facts at issue. *Brosseau*, 543 U.S. 194, 125 S. Ct. at 600, 160 L. Ed. 2d at 591.

The court must first consider whether there has been a constitutional violation. *Saucier*, 533 U.S. at 201. In this case, the officers used deadly force to apprehend plaintiff. Deadly force is not appropriate merely because the suspect is believed to have committed a felony. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, it is not constitutionally unreasonable to use deadly force when the officer has provided warning to the suspect and there is probable cause to believe that the suspect has committed a crime involving the infliction of serious physical harm, threatened to commit such a crime, or poses a threat of serious physical harm to the officer or

---

[3] "Of course, in an obvious case, these [general] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. 194, 125 S. Ct. at 599, 160 L. Ed. 2d at 590. The Supreme Court did not detail what might constitute an obvious violation. However, in light of the relevant precedent applicable to these facts, this is, if anything, a case where the officers' actions were well within the boundaries of permissible force established by the Fourth Amendment. *See infra*.

others. *Id*. at 11-12.  Courts are particularly wary of questioning a police officer's response to individuals who pose a real or perceived threat to others: "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 397; *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

The uncontroverted evidence demonstrates that the officers' actions clearly do not run afoul of the Fourth Amendment.  Plaintiff was holding Ms. Scott against her will and brandishing a rifle.  These facts were proved beyond a reasonable doubt and resulted in his conviction for attempted kidnaping and felonious assault.  Thus, there was an ongoing crime involving the threat of serious physical harm.  The officers warned plaintiff to put down his weapon and to free Ms. Scott.  When plaintiff refused to heed these warnings, the officers were justified in perceiving a threat to Ms. Scott, the officers and the surrounding community.  The officers only fired upon plaintiff after he refused to comply with the officers' requests.

The Sixth Circuit has repeatedly found police shootings to be justified when the risk to others was not as obvious as a woman held against her will by an uncooperative man brandishing a rifle. For example, one suspect in a bank robbery had completed the felony and was driving erratically to evade capture.  *Dudley v. Eden*, 260 F.3d 722, 727 (6th Cir. 2001).  The Sixth Circuit found that although the suspect "was not armed and had no intention of killing anyone except himself, there is no way that [the officer] could have known this."  *Id*.  Here, plaintiff refused requests to release Ms. Scott, and officers were reasonable to believe that he would pose a danger to others.  In *Smith*, the suspect was shot following an extended and dangerous high-speed chase.  *Smith*, 954 F.2d at 347.  "Even unarmed, [the driver] was not harmless; a car can

6

be a deadly weapon." *Id*.  Here, plaintiff was armed with a rifle and ignored police requests to relinquish the weapon.  Finally, in *Rhodes v. McDannel*, the suspect approached an officer and another individual wielding a machete.  *Rhodes v. McDannel*, 945 F.2d 117, 118 (6th Cir. 1991).  Although the officer shot and killed the suspect, the Sixth Circuit did not find this to be excessive.  *Id*.  Here, plaintiff had a rifle rather than a machete and the degree of force used by the officers was more measured, with wounds only to the lower back, side and buttocks.

This is not a questionable or borderline case.  Plaintiff has not responded to defendants' motion with contrary facts, and even drawing all inferences in favor of plaintiff, there is no doubt that plaintiff's actions confronted the officers with a volatile and unpredictable situation, and that the officers' response to that situation was objectively reasonable under the Fourth Amendment.

Because the officers are entitled to summary judgment that their seizure of plaintiff did not violate the Fourth Amendment, it is unnecessary to decide whether they are entitled to qualified immunity.  *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Plaintiff also has claims against the City of Strongsville.  In certain situations, municipalities can be liable under 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  However, respondeat superior liability is not available; instead, the injury must result from some independent wrongdoing of the municipality such as improper training, policy or custom that results in a constitutional violation.  *Cash v. Hamilton County Dep't of Adult Probation*, 388 F.3d 539, 542-43 (2004).  The City of Strongsville has not addressed these issues.  Nonetheless, summary judgment in favor of the City is appropriate because the officers

7

did not violate plaintiff's Fourth Amendment rights.  *See* Monell, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Smith*, 954 F.2d at 348 (dismissing claims against a city and police chief in light of summary judgment in favor of the officer).

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment and dismisses all claims against the officers and the City of Strongsville.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 11/22/05